# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 03/03/2023 08:09 AM David W. Slayton, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Randolph Hammock

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA  92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
   Attorneys for Plaintiff
7

8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9                            **COUNTY OF LOS ANGELES**

10

11  REBEKA RODRIGUEZ,                        Case No. 23STCV04679

12          Plaintiff,

13       v.
                                             **COMPLAINT FOR VIOLATION OF THE**
14  MATTRESS FIRM, INC., a Delaware corporation   **VIDEO PROTECTION PRIVACY ACT**
    d/b/a/ www.mattressfirm.com; and DOES 1
15  through 10, inclusive,

16          Defendants.

## I. INTRODUCTION

1. Whenever someone watches a video on www.mattressfirm.com (the "Website"), Defendants secretly report all the details to Meta: the visitor's personally identifiable information ("PII"), the titles watched, and more. They do this so that the consumer can then be bombarded with more targeting advertising on Meta platforms such as Facebook.

2. As shown below, Defendants' actions violate the Video Privacy Protection Act of 1988, 18 U.S.C. §§ 2710 *et seq.* ("VPPA").  As such, Defendants are liable for statutory damages, an injunction, and related relief.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over all causes of action asserted herein.

4. Venue is proper in this Court because Defendants knowingly engage in the conduct complained of in this County.

5. Any out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

## III. PARTIES

6. Plaintiff Rebeka Rodriguez is an individual and a consumer advocate who is a citizen of California.

7. Defendant Mattress Firm Inc. is incorporated in Delaware with its principal place of business in Houston, Texas.  It is an American mattress store chain founded headquartered in Houston, Texas.  The company has annual sales in excess of $4 billion and operates numerous retail stores in California.

8. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants."

9. Defendants own, operate, and or control the Website.  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff will amend the Complaint to reflect the true names of the DOE Defendants when such identities become known.

## IV. FACTUAL ALLEGATIONS

A.     THE FACEBOOK TRACKING PIXEL

10.    Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1]

11.    To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

12.    Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3]  Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

13.    Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

14.    The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website.  Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

15.    Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

16.    The Facebook Tracking automatically collects "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10]

B.     DEFENDANTS ARE A "VIDEO TAPE SERVICE PROVIDER" UNDER THE VPPA.

17.    Defendants are "engaged in the business of delivery of video cassette tapes or similar audio-visual materials."  18 U.S.C. § 2710(a)(4).  Specifically, Defendants' business model involves using pre-recorded videos and audio-visual materials to promote and monetize their products.

18.    Consistent with its business model, the Website hosts and delivers content including

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited February 2023).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited February 2023).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https:/www.facebook.com/business/help/20502906038706 (last visited February 2023).

Continued on the next page

videos for the purpose of monetizing the videos:

**Figure 1**



19.   As such, Defendant is a Video Tape Service Provider under the VPPA.

---

[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited February 2023).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited February 2023).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764 94 (last visited February 2023); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited February 2023).
[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.
[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED,https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited February 2023).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited February 2023).
[10] Id.

C. **DEFENDANT KNOWINGLY DISCLOSED PLAINTIFF'S PII TO FACEBOOK.**

20. The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.' " *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).

21. Plaintiff has a Facebook account and watched the video, ""Putting Words into Actions" on the Website in February 2023. Defendants disclosed information that allows Meta (and any ordinary person) to readily identify Plaintiff's video-watching behavior, as shown by the below exemplar of the information Defendant transmits to Meta when someone watches a video on the website:

**Figure 2**



**Figure 3**



**Figure 4**

22. Defendant's actions readily permit an ordinary person to identify Plaintiff's video-watching behavior.

**D.     PLAINTIFF IS A "CONSUMER" UNDER THE VPPA.**

23.     The VPPA defines the term "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1).

24.     Plaintiff has downloaded Defendant's app for use onto a smart phone. As such, Plaintiff is a "subscriber" and therefore a "consumer" under the VPPA.

25.     Plaintiff is a consumer privacy advocate with dual motivations for watching a video on Defendants' Website. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendants. Second, Plaintiff is a "tester" who works to ensure that companies abide by the obligations imposed by federal law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

26.     During the past year, Plaintiff visited the Website and watched one or more videos.

27.     When Plaintiff watched videos on the Website, Defendants disclosed information that allowed Meta (and any ordinary person) to readily identify Plaintiff's video-watching behavior. Defendants did so knowingly and for the purpose of retargeting Plaintiff in connection with Facebook's advertising campaigns. Defendants did not obtain the informed, written consent of Plaintiff to disclose PII concerning Plaintiff to third parties.

28.     Visitors would be shocked and appalled to know that Defendants secretly disclose to Facebook all of the key data regarding a visitor's viewing habits.

29.     Defendants' conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

**30.     Plaintiff brings this matter as an individual action with the hope that Defendant will stop and fully remedy the illegal conduct. If Defendant declines, Plaintiff will amend this Complaint to add additional Plaintiffs, assert claims on behalf of a nationwide class, or both.**

## V.     CAUSE OF ACTION

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

### 18 U.S.C. § 2710 *et seq.*

31. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

32. Defendants are "video tape service provider[s]" that create, host, and deliver videos on the Website as set forth above. Defendants use videos to collect viewers' PII so they can later retarget them for advertisements.

33. Plaintiff is a "consumer" as set forth above. 18 U.S.C. § 2710(a)(1).

34. As set forth above, Defendants knowingly disclosed Plaintiff's PII to Facebook that allows any ordinary person to readily identify Plaintiff's video-watching behavior.

35. Defendants knowingly disclosed Plaintiff's PII because they used that data to build audiences on Facebook and retarget Plaintiff for Facebook's advertising campaigns.

36. Defendants did not obtain the informed, written consent of Plaintiff to disclose PII concerning Plaintiff to third parties.

37. Defendants' disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants, individually and on behalf of all others similarly situated, as follows:

    a.     For an order declaring that Defendants' conduct violates the VPPA;

    b.     An award of statutory damages under the VPPA;

    c.     For injunctive relief to stop the illegal conduct;

///

///

///

| | | |
|---|---|---|
| e. | For an order awarding Plaintiff's attorneys' fees; and | |
| f. | For all such other relief, at law or in equity, as may be proper. | |

Dated: March 3, 2023

                                                       PACIFIC TRIAL ATTORNEYS
                                                       A Professional Corporation

By: _____
      Scott J. Ferrell
      Attorneys for Plaintiff